UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
UNITED STATES OF AMERICA,

       - against -

JERROD MARTIN,

              Defendant.
-------------------------------------------------------------- X

**MEMORANDUM DECISION AND ORDER**

03-cr-795 (BMC)

**COGAN**, District Judge.

Defendant has filed *pro se* a motion to set aside the judgment pursuant to Federal Rule of Civil Procedure 60(b), and, through his attorney from the Federal Defenders of New York, a motion to reduce his sentence pursuant to the First Step Act, Pub. L. No. 115-391 § 404, 132 Stat 5194, 5222 (2018). This order addresses both motions.

## BACKGROUND

Defendant is one of four brothers who led the Martin Family Crew, which was a narcotics distribution organization that operated primarily in Brooklyn, New York, in addition to areas elsewhere in New York State and other states, from approximately 1994 to 2005. Defendant oversaw the Martin Family Crew's operations in Schenectady, New York.

On June 18, 2003, defendant was arrested in Schenectady in connection with state criminal charges and was subsequently writted into federal custody for the charges at issue in this case. Defendant was 23 years old when he was arrested, and he did not have a felony criminal record. He has two children, who were approximately one and eight years old at the time of his arrest. Defendant has been incarcerated since his arrest.

On November 1, 2005, defendant pled guilty before Magistrate Judge Gold pursuant to a plea agreement to conspiracy to distribute and possess with the intent to distribute cocaine base in violation of 21 U.S.C. § 846 (Count 7) and to using a firearm in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c) (Count 10). According to the operative superseding indictment, the drug conspiracy charge involved 50 grams or more of cocaine base. In his plea agreement and at his plea allocution, however, defendant stipulated that the amount of cocaine base involved in the offense was 1.5 kilograms.

Although defendant's plea agreement is not in the record before the Court, the plea proceeding before Judge Gold makes it clear that the plea agreement used the drug Guidelines plus 60 months consecutive on the firearms charge to arrive at a total Guidelines range of 188-235 months.

However, the Presentence Report ("PSR") calculated defendant's Guidelines range as 360 months to life. This calculation was based on an offense level of 40 and a criminal history category of three. The base offense level was computed predicated upon a homicide committed by other members of the Martin Family Crew, in furtherance of its drug-trafficking operations. Because defendant was a leader of the organization, the PSR indicated that defendant was accountable for the murder, and calculated his Guidelines range accordingly.

The PSRs for defendant's codefendants also included Guidelines calculations based on the murder rather than the drugs involved in the crimes for which they were ultimately convicted. But at or prior to their sentencings (unlike, as shown below, defendant's sentencing), their counsel objected to the PSR calculation. Consistent with their plea agreements, the Government did not oppose using the Guideline range from the plea agreements. Judge Trager found a Guidelines range based on the drug count, not the murder count, and sentenced them within it.

Defendant was sentenced by Judge Trager on July 18, 2007, which appears to be the last sentence imposed on those defendants who had pled guilty. There was virtually no discussion of the applicable Guideline. The only time the Guidelines were mentioned was towards the end of the sentencing when Judge Trager pronounced the sentence, and then realized he had not fulfilled his obligation to make a Guidelines finding: "The sentence of the court is as follows: 200 on Count 7, which, by the way, the guidelines talk for life imprisonment." He next realized that there was a consecutive mandatory five years on Count 10, the firearm charge, and that 200 months on Count 7 plus this consecutive sentence was higher than he wanted to impose. He therefore restated the sentence to total 210 months, consisting of 150 months on Count 7 plus the mandatory consecutive 60 months on Count 10.

Defendant's counsel did not object to Judge Trager's "by the way" Guidelines calculation. There did not seem to be any reason to do so. The 210 months to which he sentenced defendant was almost precisely in the middle of the 188-235 month range set forth in the parties' plea agreement.

But, as these things turn out, it did make a difference. In 2014, Guidelines Amendment 782 became effective. It allowed a retroactive sentence reduction for those defendants who had been sentenced pursuant to particular drug Guidelines – including the Guideline applicable to Count 7 to which defendant had plead. At least some of defendant's co-defendants whose attorneys had objected to the murder Guideline made successful motions under 18 U.S.C. § 3582(c) to reduce their sentence (or if they were not successful, at least they were eligible). However, since Judge Trager had referenced the murder Guideline (albeit briefly) – as did the Statement of Reasons that Judge Trager signed – I ruled that defendant's Guideline range was not lowered by Amendment 782, and he was not eligible for a reduction.

Defendant has served almost 16 years, and thus has approximately one-and-a-half years left on his sentence.

## DISCUSSION

### I. Motion to Set Aside Judgment

Defendant has filed a motion pursuant to Federal Rule of Civil Procedure 60(b), which generally provides that "[o]n motion and just terms, the court may relieve a party . . . from a final judgment." Specifically, defendant points to subsections four through six, which permit a court to relieve a party from a final judgment if that judgment is void; if the judgment has been satisfied, vacated, or applying it would no longer be equitable; or for any other reason. See Fed. R. Civ. P. 60(b)(4)-(6).

Defendant's challenge relates to the fact that he was not sentenced pursuant to a Guidelines range calculated based on the drugs involved in his offense. I discussed this with the parties at length during a status conference on March 13, 2015, after defendant filed a motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c), based on the retroactive adjustment to the drug Guidelines under Amendment 782 (for which, it will be recalled, I found he was not eligible, having been sentenced pursuant to the murder Guideline).

Because defendant had already filed and been denied relief under 28 U.S.C. § 2255 prior to this issue arising, I suggested to then-defense counsel that he first needed to get permission from the Second Circuit to file a second or successive petition for habeas corpus relief under 28 U.S.C. § 2255 to argue that his counsel at sentencing was ineffective for failing to object to the PSR's Guidelines calculation. Once he had permission from the Second Circuit to proceed, defendant could file a joint 28 U.S.C. § 2555 petition for habeas corpus relief and 18 U.S.C. § 3582 motion to reduce his sentence.

4

After the status conference, defendant withdrew his then-pending § 3582 motion, consistent with the Court's direction. But his former attorney did not follow up on the Court's suggestion by filing a motion for permission to file a second or successive habeas petition.

Although the Court has an obligation to read defendant's *pro se* motion broadly and interpret it to raise the strongest argument it suggests, there are only two possible ways to construe defendant's motion: either as one made under 18 U.S.C. § 3582 to reduce his sentence or as one made under 28 U.S.C. § 2255 for habeas corpus relief. For the reasons stated on the record during the March 13, 2015 status conference, defendant is not eligible for a sentence reduction pursuant to 18 U.S.C. § 3582. And as the Court explained, before defendant can once again seek habeas relief before this Court, he must first get permission from the Second Circuit to file a second or successive petition under 28 U.S.C. § 2255. Defendant has not done that, so his motion is denied.

**II. Motion to Reduce Sentence**

When defendant was sentenced in 2005, the relevant statutory penalties imposed a mandatory minimum of 10 years for conspiracy to distribute 50 or more grams of crack cocaine. They also imposed a mandatory minimum of five years for the firearms charge, which had to run consecutive to any other sentence. Thus, at the time of his sentencing, defendant faced a mandatory minimum sentence of 15 years (or 180 months) imprisonment.

The Fair Sentencing Act, Pub. L. No. 111-220, 124 Stat. 2372 (2010), was enacted on August 3, 2010. Section 2 of the Fair Sentencing Act increased the drug amount triggering the 10-year mandatory minimum for distribution of cocaine base from 50 grams to 280 grams (thereby decreasing the mandatory minimum for 50 grams to five years). But this change only applied prospectively, so the Fair Sentencing Act did not provide any relief for defendants who were convicted before its enactment.

However, the First Step Act, which was enacted on December 21, 2018, made § 2 of the Fair Sentencing Act retroactive. As relevant here, this means that a defendant who committed a drug offense involving between 50 and 279 grams of cocaine base before the Fair Sentencing Act was enacted could apply to the sentencing court for a reduced sentence pursuant to the modifications implemented by the Fair Sentencing Act. Defendant has filed the instant motion to reduce his sentence pursuant to that avenue of retroactive relief.

A defendant is eligible to receive a sentence reduction under the First Step Act if the defendant was convicted of a "covered offense." A "covered offense" is defined in § 404(a) as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372), that was committed before August 3, 2010." Section 2 of the Fair Sentencing Act modified the statutory penalties for 21 U.S.C. § 841(a)(1), as detailed in 21 U.S.C. § 841(b)(1)(A)(iii). By extension, the attendant penalties for a conviction (such as defendant's) under 21 U.S.C. § 846 for conspiring to violate § 841(a)(1) were also modified, because § 846 provides that anyone who conspires to commit an offense under the Controlled Substances Act "shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the . . . conspiracy."

The Government suggests (although not explicitly) that defendant might not be eligible for a reduced sentence because he stipulated that the amount involved in the offense was 1.5 kilograms of cocaine base and agreed to be sentenced on that amount. Because that amount of cocaine base would have triggered the 10-year statute of limitations under the Fair Sentencing Act as well as the law in place at the time he was sentenced – as 1.5 kilograms is greater than both 280 grams and 50 grams – the penalties that defendant faced were not technically modified

by the enactment of the First Step Act. But "it is the statute of conviction, not actual conduct, that controls eligibility under the First Step Act." United States v. Davis, No. 07-CR-245, 2019 WL 1054554, at *2 (W.D.N.Y. Mar. 6, 2019). Defendant was convicted of violating a criminal statute for which the statutory penalties were modified by § 2 of the Fair Sentencing Act, that he committed before August 3, 2010, so defendant has committed a "covered offense" under the First Step Act.

Accordingly, under § 404(b) of the First Step Act, the Court "may . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) were in effect at the time the covered offense was committed." Although the Court may grant defendant relief, nothing in the First Step Act mandates that the Court impose a sentence reduction. Rather, the decision to grant any relief is vested in the discretion of the sentencing court. See Davis 2019 WL 1054554, at *2.

Defendant moves the Court to impose a reduced sentence of 60 months for the drug conspiracy offense – which would reflect the five-year mandatory minimum imposed under the Fair Sentencing Act for an offense involving 50 grams or more of cocaine base – to be served consecutive to the five-year mandatory minimum that is still in place for the firearm offense, for a total sentence of 120 months imprisonment. This sentence would result in defendant's immediate release, because he has already served more than 120 months of his original sentence.

When the defendant's requested reduced sentence would result in an "overserved sentence," that request should be denied based on "public safety and deterrence reasons." Davis, 2019 WL 1054554, at *2 n.1 (internal citations omitted); cf. U.S.S.G. § 1B1.10(b)(2)(C) ("In no event may the reduced term of imprisonment [under 18 U.S.C. § 3582(c)(2)] be less than the term of imprisonment the defendant has already served."). Instead, "[t]he appropriate remedy is

simply to reduce defendant's sentence to the time he has already served, not a formal resentencing." United States v. Sampson, 360 F. Supp. 3d 168 (W.D.N.Y. 2019) (internal quotation marks and citations omitted). The Court must therefore determine whether it would be appropriate to impose a sentence reduction to time served in this case.

The Government argues that the Court should keep in place defendant's sentence of 210 months imprisonment, because Judge Trager's sentence adequately reflects defendant's leadership role in the drug trafficking organization and the severity of his offense conduct. The Court agrees as a general matter that the sentence which Judge Trager ordered appropriately reflected both of those important considerations. As the PSR details, defendant was intimately involved with the operations of a large-scale drug trafficking organization that used weapons and violence to further its goals. Because defendant was one of four brothers who led the organization, he is responsible for not only his own acts but also the reasonably foreseeable acts of the organization's members, including their acts of violence, of which the PSR details several. And although it does not impact his eligibility for a sentence reduction, the sheer amount of cocaine base for which defendant admitted responsibility counsels towards the imposition of a greater, rather than a lesser, sentence.

Defendant, on the other hand, argues that the Court should consider the need to avoid unwarranted sentencing discrepancies between defendant and his co-defendants under 18 U.S.C. § 3553(a)(6) and defendant's post-sentencing conduct under Pepper v. United States, 562 U.S. 476, 490-993 (2011), to determine whether reducing his sentence is appropriate. But the Court is not resentencing defendant. If it were, defendant would have a right, among other things, to be present for the resentencing proceedings. The Court is simply deciding whether to impose a sentence reduction under the First Step Act. A sentence reduction triggers consideration of

neither the sentencing factors articulated in 18 U.S.C. § 3553(a) nor post-sentencing conduct under Pepper.  Instead, the proper consideration is whether a sentence reduction is consistent with congressional intent.

In this case, had defendant been sentenced according to the drug Guidelines, the Government concedes that this Court would have considered granting defendant a reduction in his sentence when he filed his original motion under 18 U.S.C. § 3582.  Judge Trager departed from the murder Guidelines calculation in a significant way and imposed a sentence that was less than the lower end of the Guidelines range articulated in the PSR.  In other words, he intended to sentence defendant according to his culpability for the drugs involved in the crimes to which he pled guilty, consistent with the parties' plea agreement and his co-defendants' sentences.

And although Judge Trager sentenced defendant to 30 months more than the mandatory minimum he faced at the time of his sentence – which suggests that Judge Trager did not believe that the minimum sentence was appropriate in defendant's case – a reduction to time served at this point in defendant's sentence reflects far more than a 30-month addition to the mandatory minimum sentence defendant would have faced if the Fair Sentencing Act was in place at the time he committed the crimes to which he pled guilty.  In other words, I believe that, everything else being equal except the mandatory minimum defendant faced on Count 7, if defendant's Guidelines range had been lower at sentencing, Judge Trager would have sentenced him to less time.

Because one of the purposes of the First Step Act is to allow a sentencing court to impose a sentence reduction that reflects a sentence the defendant would have received if the Fair Sentencing Act were in place at the time the crime was committed, a sentence reduction of time served is consistent with congressional intent and appropriate in this case.

## CONCLUSION

Accordingly, defendant's [597] motion to set aside the judgment is DENIED and his [609] motion to reduce his sentence is GRANTED. His sentence is reduced to time served.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
April 10, 2019